O

# United States District Court
# Central District of California

E.M.,

        Plaintiff,

    v.

Varsity Brands, LLC et al.

        Defendants.

Case №: 2:22-cv-09410-ODW (ASx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [155] [161]**

## I.     INTRODUCTION

Plaintiff E.M.[1] brings this action alleging that she was sexually assaulted by her cheer coach, Defendant Shawn Miller.  (First Am. Compl. ("FAC"), ECF No. 133.) During the time of the alleged misconduct, Miller was credentialed by the U.S. All Star Federation ("USASF"), a national governing body "whose responsibility included creating a safe and positive environment for minor child participants."  (*Id.* ¶¶ 3, 63.) Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), Miller now moves to dismiss the first, second, fourth, ninth, and eleventh causes of action, and USASF moves to dismiss the first, second, third, fifth, seventh, eighth, ninth, tenth, eleventh, and twelfth causes of action.  (Miller Mot. Dismiss ("Miller Mot."), ECF No. 161; USASF Mot. Dismiss ("USASF Mot."), ECF No. 155.)  E.M. opposes both motions.

---

[1] Given the nature of this action, Plaintiff will be identified only by the initials E.M.

(Opp'n Miller Mot., ECF No. 162; Opp'n USASF Mot., ECF No. 160.)   For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** each of Defendants' Motions.[2]

## II.   BACKGROUND

Unless stated otherwise, the following facts are taken from the Plaintiff's First Amended Complaint.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that well-pleaded factual allegations are accepted as true for purposes of a motion to dismiss).

**A.   The Abuse of Plaintiff E.M.**

E.M. is a former cheer athlete who Miller began coaching when she was fifteen years old.   (FAC ¶ 162.)   At that time, Miller—a well-respected coach in the cheer community—was around the age of twenty-four.   (*Id.* ¶¶ 162–63.)   Through their coaching relationship, E.M. grew to trust and admire Miller, looking up to him as a coach and striving to win his approval.   (*Id.* ¶ 165.)   When E.M. was fifteen years old, Miller began paying special attention to E.M.   (*Id.* ¶ 164.)   Miller "began implementing unusual stunt spotting techniques . . . and unconventional catching positions," resulting in Miller "touching [E.M.] in an unwanted and inappropriate manner."   (*Id.* ¶ 166.)   Between the ages of fifteen and eighteen, "Miller's lingering touches eventually progressed to groping, fondling and other unwanted touching."   (*Id.* ¶ 167.)   Miller's relationship with E.M. extended outside of the cheer facility, where Miller "provided [E.M.] with alcohol and illegal drugs, including cocaine and MDMA."   (*Id.* ¶¶ 172, 181.)   E.M. did not report Miller's conduct "[b]ecause of her fondness for Defendant Miller, and his position of authority over her."   (*Id.* ¶ 169.)

After E.M. turned eighteen, Miller "initiated a sexual relationship with [E.M.], often taking her to his home or vehicle to engage in sexual intercourse."   (*Id.* ¶ 176.)   As a licensed realtor, Miller also used his access to "upscale, vacant properties listed

---

[2] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

for sale to lure [E.M.] to secluded locations where he would engage in sexual intercourse with her." (*Id.* ¶ 178–79.) The sexual relationship between Miller and E.M. continued for approximately two years, during which time Miller continued to work as a cheer coach. (*Id.* ¶¶ 182–83.)

Following Miller's abuse, E.M. "began experiencing severe depression, anxiety and panic attacks." (*Id.* ¶ 184.) She developed an eating disorder and a substance abuse disorder. (*Id.*) E.M. sought medical attention—including psychotherapy—to address her symptoms, but she "did not fully appreciate the root cause of her issues." (*Id.* ¶ 185.)

## B.   USASF's Alleged Involvement

Founded in 2003, USASF's purpose was "to provide governance and regulatory support." (*Id.* ¶ 62.) USASF's responsibilities included "creating a safe and positive environment for minor child participants, including an environment free from abuse and misconduct." (*Id.* ¶ 63.) During the time of the incident, E.M. and Miller both held active memberships with USASF, a prominent governing body in the cheer industry. (*Id.* ¶¶ 153–54.) E.M. was required to purchase these annual memberships to participate in her cheer program and attend certain competitive cheer events. (*Id.* ¶¶ 65–66.)

USASF created a program titled "USASF Certified," through which USASF provided a seal to "certified" gyms, coaches, or adult members that had been duly vetted and met USASF's highest standards regarding safety practices and prevention of minor child abuse. (*Id.* ¶ 67.) USASF used this credentialing and certification to signal to parents and athletes that it would "continually monitor and ensure compliance with minor child safety protections, policies, procedures and protocols by its member gyms, coaches, vendors, and other affiliates." (*Id.* ¶ 68.)

USASF also "established policies, procedures, and guidelines for everything from coaching credentials to boundaries for appropriate and inappropriate conduct." (*Id.* ¶ 77.) Through these policies, USASF undertook investigations into allegations

of misconduct by credentialed coaches and vendors.  (*Id.* ¶ 84.)  As such, when an athlete reported an incident to their gym or a certified coach within their gym, they were directed to USASF.  (*Id.* ¶ 85.)  USASF employed and retained certain individuals to provide safety and regulatory services, which included conducting investigations intended to prevent and mitigate athlete harm.  (*Id.* ¶ 363.)

## C.   Reporting Miller's Conduct

In 2021, when E.M. was cheering at the same gym where she cheered under Miller's coaching, she began experiencing severe complex post-traumatic stress disorder ("CPTSD") symptoms.  (*Id.* ¶ 186.)  It was at this time that E.M. disclosed the details of Miller's abuse to her current coach, who reported the abuse and assisted E.M. in beginning the USASF reporting process.  (*Id.* ¶¶ 186–87.)  However, rather than provide E.M. "with a degree of security," she found USASF's investigative and reporting processes to be "deeply traumatizing and unsettling."  (*Id.* ¶ 188.)  During the investigative interviews with USASF investigators, E.M. experienced bullying, skepticism, dismissiveness, and a general lack of belief.  (*Id.* ¶ 189.)  Furthermore, she was never made aware of any disposition of her report, or any action taken against Miller as a result of her report.  (*Id.*)  Miller was ultimately added to the USASF Uniform Ineligibility List, where he was cited for "[m]ember policy violation related to athlete protection."  (*Id.* ¶ 190.).

## D.   This Case's Procedural History

E.M. initiated this action on December 29, 2022, (Compl., ECF No. 1), and filed her First Amended Complaint on October 4, 2023.  In her FAC, E.M. alleges: (1) violation of the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C. § 2255;  (2) gross negligence;  (3) negligent supervision;  (4) assault and battery; (5) breach of contract; (6) unjust enrichment; (7) fraud; (8) negligent security; (9) civil conspiracy; (10) *respondeat superior*; (11) intentional infliction of emotional distress ("IIED");  and  (12) violation  of  the  California  Consumers  Legal  Remedies  Act ("CLRA"), Cal. Civ. Code § 1770.  (FAC ¶ 207–388.)

Five of the initial twelve defendants remain active in this case: USASF; CheerForce, LLC; Rebecca Herrera; Shawn Herrera; and Shawn Miller.  Defendants CheerForce, Rebecca Herrera, and Shawn Herrera have each answered E.M.'s FAC. (*See* Answers, ECF Nos. 150–52.)  Miller and USASF now move under Rule 12(b)(6) to dismiss portions of E.M.'s FAC.  (Miller Mot.; USASF Mot.)

### III.      LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . 'as true and . . . in the light most favorable'" to the plaintiff.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)).  However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV.   MILLER'S MOTION TO DISMISS

Turning first to Miller's Motion, Miller moves to dismiss E.M.'s first, second, fourth, ninth, and eleventh causes of action. The Court considers each of Miller's arguments in turn.

### A.   The California Common Law Claims

E.M. brings her second (gross negligence), fourth (assault and battery), ninth (civil conspiracy), and eleventh (IIED) causes of action under California common law. Miller argues that each of these claims fails because the applicable statute of limitations period is two years and therefore time barred as a matter of law. (Miller Mot. 8–9.)

Under the California Code of Civil Procedure, an action for assault, battery, or injury to an individual caused by the wrongful act or neglect of another must be brought within two years. Cal. Civ. Proc. Code § 335.1. In 2019, however, California's Assembly Bill 218 amended the California Code of Civil Procedure to allow for victims of "childhood sexual abuse" to file civil claims related to the abuse at any time up until the age of 40. *See* Cal. Assemb. B. 218; Cal. Civ. Proc. Code § 340.1. Miller argues that the extended limitations period does not apply here because E.M. is not a victim of "childhood sexual abuse," which is defined to include "any act committed against the plaintiff that occurred when the plaintiff was under the age of 18 years and that would have been proscribed by . . . Section 647.6 of the Penal Code." Cal. Civ. Proc. Code § 340.1(c).

Although Miller is correct that E.M. pleads the sexual relationship between Miller and E.M. began only after E.M. turned eighteen, a sexual relationship is not required for certain conduct to be proscribed by California Penal Code section 647.6 and therefore constitute "childhood sexual abuse."   Section 647.6 penalizes any person "who annoys or molests any child under 18 years of age."  Cal. Penal Code § 647.6.  To convict a defendant under this statute, the prosecution must prove (1) "the defendant engaged in conduct directed at a child," (2) "a normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct," (3) "the defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child," and (4) "the child was under the age of 18 years at the time of the conduct."  *People v. Clotfelter*, 65 Cal. App. 5th 30, 50 (2021).  "It is not necessary that the child actually be irritated or disturbed or that the child actually be touched."  *Id.* (citing CALCRIM No. 1122; *People v. Lopez*, 19 Cal. 4th 282, 289 (1998)).  It is an objective determination whether the conduct would have disturbed, irritated, offended, or injured a normal person.  *Id.* at 50–51.

Here, E.M. alleges that Miller used the guise of "spotting techniques" and "catching positions" in order to "touch[ E.M.] in an unwanted and inappropriate manner."  (FAC ¶¶ 164, 166.)  Miller's touching of E.M. "progressed to groping, fondling and other unwanted touching."  (*Id.* ¶ 167.)  It is therefore entirely reasonable that a normal person, without hesitation, would have been disturbed, irritated, offended, and injured by this conduct.  E.M. further alleges that Miller began paying her special attention, even when Miller first began coaching her at the age of fifteen.  (*Id.* ¶¶ 164, 166.)  That relationship then turned sexual almost immediately after E.M. turned eighteen, (*id.* ¶ 176), rendering it reasonable to conclude that Miller's conduct before E.M. obtained the age of majority was motivated by an unnatural or abnormal sexual interest.  It is also clear that E.M.'s allegations satisfy the two remaining elements of section 647.6: that Miller's conduct was directed at E.M. and that E.M. was under the age of 18 years old at the time of the conduct.  (*See* FAC ¶ 167

(alleging that E.M. was subjected to Miller's conduct of groping, fondling, and other unwanted touching from the ages of fifteen to eighteen years old).)

Therefore, at this stage of litigation—where E.M.'s well-pleaded factual allegations are taken as true—Miller's unwanted touching of E.M. during coaching sessions could be found to violate California Penal Code section 647.6.  Thus, E.M. sufficiently pleads conduct that meets the definition of "childhood sexual assault" for the purpose of California Code of Civil Procedure section 340.1, and E.M.'s civil claims under California common law are not time barred.[3]

**B.    Violation of the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C. § 2255**

Miller next argues that E.M fails to plead facts sufficient to support a violation of 18 U.S.C. § 2255.  (Miller Mot. 6–7.)  Under this statute, any person "who, while a minor, was a victim of a violation of section . . . 2422 . . . and who suffers personal injury as a result of such violation . . . may sue in any appropriate United States District Court."   18 U.S.C. § 2255.   To summarize the relevant criminal statute, § 2422(a) prohibits anyone from knowingly persuading, inducing, enticing, or coercing an individual to travel in interstate or foreign commerce with the purpose of engaging in prostitution or any criminal sexual activity for which any person can be charged with a criminal offense.   18 U.S.C. § 2422(a).   Furthermore, § 2422(b) provides that if the individual who has been persuaded, induced, enticed, or coerced to engage in prostitution or other criminal sexual act is under the age of 18, then the term of imprisonment shall be no less than ten years.  18 U.S.C. § 2422(b).  Miller argues that E.M. was not, while a minor, a victim of § 2422 because "a simple reading of this statute" makes it clear that it "deals with forced prostitution, which is certainly not alleged in this Complaint."  (Miller Mot. 6.)  However, Miller fails to engage with the latter provision of the statute, which includes "prostitution *or any sexual activity for*

---

[3] Although this fact is not disputed, the Court notes that E.M. is not yet 40 years of age.  (*See* Opp'n Miller Mot. 6.)

*which any person can be charged with a criminal offense*."   18 U.S.C. § 2422(b) (emphasis added); *see also* 18 U.S.C. § 2422(a) (". . . in prostitution, or in any sexual activity for which any person can be charged with a criminal offense . . .").

"By its plain language, Section 2422(b) criminalizes communications that persuade, induce, entice, or coerce a minor to engage in sexual activity regarded as criminal."   *United States v. Lopez*, 4 F.4th 706, 720 (9th Cir. 2021).   Here, as discussed in the previous section, Miller could be found to have violated California Penal Code section 647.6, which proscribes "annoy[ing] or molest[ing] any child under 18 years of age."   As E.M. has sufficiently pleaded a potential violation of California Penal Code, this could also be sufficient to constitute sexual activity for which a person can be charged with a criminal offense and support a violation of § 2422.   The Court therefore rejects Miller's only argument for why the Court should dismiss E.M.'s claim under 18 U.S.C. § 2255, which is that § 2422 does not apply because the statute "only deals with forced prostitution." (Miller Mot. 6–7.)   The Court denies Miller's motion to dismiss on this basis.   Section 2422 is broader than Miller contends, *see Lopez*, 4 F.4th at 721 ("Section 2422(b) . . . should be construed broadly."), and Miller raises no other grounds for why the Court should dismiss E.M.'s first cause of action.

## C.   Civil Conspiracy

Lastly, Miller argues that E.M. fails to sufficiently plead her ninth cause of action for civil conspiracy.   (Miller Mot. 7–8.)   Civil conspiracy requires facts showing that "each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it." *Choate v. County of Orange*, 86 Cal. App. 4th 312, 333 (2000).

E.M. argues that the "gravamen" of her civil conspiracy claim is "promoting the private All-Star cheer network in which Defendant Cheer[F]orce operated, and in which Miller was a star coach, by falsely claiming that the network was safe from the

threat of sexual abuse."  (Opp'n Miller Mot. 4 (citing FAC ¶¶ 286–87).)  Miller was allegedly "part of this agenda," which E.M. claims "was motivated by 'substantial revenue, profits, and funding paid by the athletes and their families in exchange for the fraudulent messages and misrepresentations,' and by Defendants' efforts to conceal dangerous coaches within the network." (*Id.* (quoting FAC ¶¶ 287–89).)

"[T]o maintain an action for conspiracy, a plaintiff must allege that the defendant had knowledge of and agreed to both the objective and the course of action that resulted in the injury, that there was a wrongful act committed pursuant to that agreement, and that there was resulting damage." *Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 823 (2005) (citing *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 47 (1998)).  Civil conspiracy "is not an independent tort," but rather a "legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Id.* (quoting *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995)).

Here, E.M. fails to plead facts alleging that Defendants "came to a mutual understanding to accomplish a common and unlawful plan." *Choate*, 86 Cal. App. 4th at 333.  "It is not enough that the [conspirators] knew of an intended wrongful act, they had to agree—expressly or tacitly—to achieve it." *Id.*  E.M. falls short of pleading a prima facie case of a conspiracy—centered around Miller's wrongful act— that the other Defendants agreed to achieve a common plan "to conceal dangerous coaches within the network."  (Opp'n Miller Mot. 4.)  There is also no evidence pleaded with factual specificity that any other Defendants knew Miller was a "dangerous coach," or that there was intent, knowledge, or agreement to enter into a conspiracy.  Although E.M. summarily concludes that "Defendants were a collective group of individuals working in concert and individually toward a common plan," (FAC ¶ 285), E.M. fails to support these allegations with well-pleaded facts that the

common plan was unlawful.  Accordingly, the Court grants Miller's motion to dismiss E.M.'s ninth cause of action for civil conspiracy with leave to amend.

## V.   USASF'S MOTION TO DISMISS

Turning next to USASF's Motion, USASF moves to dismiss the first, second, third, fifth, seventh, eighth, ninth, tenth, eleventh, and twelfth causes of action.  The Court considers each cause of action in turn.

### A.   Violation of the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C. § 2255

First, like Miller (albeit on different grounds), USASF moves to dismiss E.M.'s first cause of action under 18 U.S.C. § 2255.  USASF, unlike Miller, is not alleged to be directly implicated in E.M.'s abuse, but rather through its role as the supervisory body overseeing All-star cheer.  (*See* FAC ¶ 41–159.)  As to E.M.'s first cause of action, USASF argues that, first, E.M. fails to allege that "Defendants have been convicted of any crime described in the federal criminal statutes listed in 18 U.S.C. § 2255" and, second, "[§] 2255 does not provide for any form of secondary/vicarious liability that could extend liability to USASF."  (USASF Mot. 4.)  As discussed above, the plain text of § 2255 states that any person "who, while a minor, was a victim of a violation of [specified enumerated sections] and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court."

Turning to USASF's first argument, although this question of law has not been fully developed in this Circuit, the Court finds that § 2255 does not require a defendant to have been criminally convicted of the predicate offense.  *See N.S. v. Rockett*, No. 3:16-CV-2171-AC, 2018 WL 6920125, at *5 (D. Or. Oct. 19, 2019) ("It is enough that the civil claimant prove by a preponderance of the evidence that the defendant violated the enumerated statute." (citing *Prewett v. Weems*, 749 F.3d 454, 458 (6th Cir. 2014))); *Doe v. Schneider*, 667 F. Supp. 2d 524, 529–30 (E.D. Pa. 2009) (requiring only that a proper predicate statute violation is alleged in the complaint,

along with supporting facts).  As examined in *Rockett*, other courts have also found this conclusion to be consistent with § 2255's legislative history.  *Rockett*, 2018 WL 6920125, at *5 (citing *Smith v. Husband*, 376 F. Supp. 2d 603, 611–12 (E.D. Va. 2005) (examining § 2255's legislative history to conclude Congress had intended the statute to provide a remedy for victims even absent a criminal conviction); *Doe v. Liberatore*, 478 F. Supp. 2d 742, 755 (M.D. Pa. 2007) (adopting *Smith*'s Congressional findings); *Cisneros v. Aragon*, 485 F.3d 1226, 1232 (10th Cir. 2007) (citing *Smith* and "assum[ing] that a criminal conviction is not necessary for a defendant to face civil liability under" § 2255)).  The Court adopts the reasoning of these courts and finds that, "given the legislative history of 18 U.S.C. § 2255, Congressional intent is to make the civil remedies provision available to any victim able to show by a preponderance of the evidence that the defendant committed the acts described in any of the listed offenses."  *Smith*, 376 F. Supp. 2d at 613.  Here, neither Miller (as discussed above) nor USASF provide a valid argument for why E.M. fails to plead a violation of 18 U.S.C. § 2422, which therefore serves as an adequate predicate offense to support a "violation" of § 2255.

USASF next argues that § 2255 does not provide for any form of vicarious liability that could extend to USASF.  USASF is correct in that the language of the statute, as well as its legislative history, do not support imposing vicarious liability under the statute.  *See Doe v. City of Gauley Bridge*, No. 2:21-CV-00491, 2022 WL 3587827, at *13 (S.D. W. Va. Aug. 22, 2022) ("[B]ased on Congress's silence and § 2255's legislative history, the [c]ourt finds that Congress did not intend to permit a theory of vicarious liability under § 2255."); *Doe v. Hansen*, No. 4:16-CV-546 JAR, 2018 WL 2223679, at * 5 (E.D. Mo. May 15, 2018) ("After careful consideration, the Court agrees with the conclusion reached by [*Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276 (D. Conn. 2013)], following the logic of [*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)], that the civil remedy provision

of [§ 2255] does not permit claims for secondary or vicarious liability."), *aff'd sub nom. Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184 (8th Cir. 2019).

Although some courts have found that secondary liability may attach under § 2255, they did so with respect to aiding and abetting—which requires intentionally helping the tortfeasor—rather than vicarious liability.  *See United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) ("Aiding and abetting is not a separate and distinct offense from the underlying substantive crime, but is a different theory of liability for the same offense.").  E.M. argues that USASF aided and abetted Miller when Miller "was employed at two separate USASF certified gyms during the time he was abusing Plaintiff."  (Opp'n USASF Mot. 6–7 (citing FAC ¶¶ 162–87).)  However, E.M. does not allege any facts supporting the contention that USASF had knowledge of Miller's conduct, or knowledge that he posed a danger to E.M. until years after the incident occurred.  In fact, E.M. does allege that USASF first learned of the incident in 2021, over a decade after the alleged misconduct took place.  (FAC ¶¶ 186–87.)  Therefore, the allegations are insufficient to extend § 2255 liability to USASF under the theory that it "aided and abetted" Miller to commit a violation of § 2422.  Accordingly, as § 2255 does not permit vicarious liability and there are no factual allegations that USASF directly violated a criminal statute enumerated in § 2255, the Court grants USASF's motion to dismiss USASF's first cause of action.  Because the Court finds that amendment would be futile, the dismissal is without leave to amend.

**B.   Gross Negligence**

USASF next argues that E.M.'s gross negligence claim fails because E.M. does not adequately allege that USASF owed her a duty of care or that USASF breached that duty.  The existence and scope of a defendant's duty are questions of law.  *Achay v. Huntington Beach Union High Sch. Dist.*, 80 Cal. App. 5th 528, 535 (2019).  California law generally maintains that, although "there is no duty to act to protect others from the conduct of third parties," there are certain exceptions that can create a

duty even where a third party causes the plaintiff harm.  *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 235 (2005).

One of these exceptions—the special relationship doctrine—can exist when the relationship between the defendant and the victim "has an aspect of dependency in which one party relies to some degree on the other for protection."  *Regents of Univ. of Cal. v. Superior Ct.*, 4 Cal. 5th 607, 620 (2018).  "The corollary of dependence in a special relationship is control.  Whereas one party is dependent, the other has superior control over the means of protection."  *Id.* at 621. "Relationships between parents and children, colleges and students, employers and employees, common carriers and passengers, and innkeepers and guests, are all examples of special relationships that give rise to an affirmative duty to protect."  *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 216 (2021).

Here, through her reliance on USASF, E.M. "[was] particularly vulnerable and dependent upon the defendant who, correspondingly, ha[d] some control over the plaintiff's welfare."  *Regents of Univ. of Cal.*, 4 Cal. 5th at 621 (quoting *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 245–46 (2008)).  USASF was responsible for vetting and credentialing the cheer coaches who were then permitted to be unsupervised with minor athletes.  USASF also created the "USASF Certified" program, which provided a seal to "certified" coaches that had been duly vetted and met USASF's highest standards regarding safety practices and prevention of minor child abuse.  (FAC ¶ 67.)  Therefore, USASF—who purports to create and foster a safe and secure environment for its athletes to practice and compete—therefore enjoys a special relationship with the plaintiff.  E.M. sufficiently alleges that USASF owes a duty of care to its minor athletes, including E.M.

E.M. also pleads that USASF breached that duty by failing to follow a prescribed set of regulatory policies that were aimed to keep athletes healthy and safe.  (*See, e.g.*, FAC ¶¶ 94–106.)  Among other instances, these failures include USASF's "refus[al] or fail[ure] to report non-member coaches and adults accused of misconduct

to law enforcement—contravening its representation that USASF and its members are mandatory reporters." (*Id.* ¶ 97.)  Accordingly, the Court finds that E.M. sufficiently pleads the challenged elements of the claim for gross negligence and denies USASF's motion to dismiss E.M.'s second cause of action as to USASF.

## C. Negligent Supervision

USASF moves next to dismiss E.M.'s third cause of action for negligent supervision.  "To establish negligent supervision, a plaintiff must show that a person in a supervisorial position over the actor had prior knowledge of the actor's propensity to do the bad act." *Z.V. v. County of Riverside*, 238 Cal. App. 4th 889, 902 (2015). To state a claim for negligent supervision, a plaintiff "must allege facts that, if proven, would show that [the defendant] exercised *significant control* over [the employee] and that 'exercise of retained control *affirmatively contributed* to the employee's injuries.'" *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 684 (9th Cir. 2009) (first emphasis added) (quoting *Hooker v. Dep't of Transp.*, 27 Cal. 4th 198 (2002)).

Here, E.M. does not sufficiently show that USASF and Miller shared an employment relationship, or that USASF exercised significant control over Miller. USASF did not make the decision to hire Miller, (*see* FAC ¶ 1 (alleging that Defendants CheerForce, Becky Herrera, and Shawn Herrera "employed Defendant Shawn Miller as a cheer coach")), nor does E.M. plead facts that establish USASF's maintained a day-to-day supervisory position over Miller.  That supervisory role was held by the cheer gym where Miller worked and was employed.  Based on the facts contained in the FAC, USASF had little or no oversight over Miller's coaching sessions.  Similarly, E.M. does not plead facts that lead to the reasonable inference that USASF had prior knowledge of Miller's alleged misconduct or that USASF should have foreseen it.  Although E.M. pleads, in a conclusory fashion, that "Defendant USASF . . . knew or had reason to know Defendant Miller, Defendant Cheer[F]orce, and Defendants Becky and Shawn Herrera had engaged in significant misconduct and abuse involving USASF-member minor athletes," (FAC ¶ 10), there

are no facts pleaded in the FAC that support that conclusion or indicate how USASF would have known of that misconduct until E.M. reported it over a decade after the incident occurred.  Accordingly, without significant control or foreseeability on the part of USASF, the Court finds that E.M. does not sufficiently plead a claim of negligent supervision against USASF.  The Court grants USASF's motion to dismiss E.M.'s third cause of action for negligent supervision as to USASF with leave to amend.

**D.    Breach of Contract**

USASF next moves to dismiss E.M.'s claim for breach of contract because she has failed to show "that a valid contract existed between Plaintiff and USASF." (USASF Mot. 9.)  However, under California law, membership policies can constitute a valid contract between parties.  *See Hernandez v. AFSCME Cal.*, 424 F. Supp. 3d 912, 922–23 (E.D. Cal. 2019) ("Plaintiffs argue that their membership agreements are not valid contracts . . . . The court disagrees."), *aff'd*, 854 F. App'x 923 (9th Cir. 2021).

"[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration."  Restatement (Second) of Contracts § 17.  "Mutual assent may be manifested by written or spoken words, or by conduct."  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).  E.M. alleges that she joined USASF's membership, paid membership dues, and enjoyed the benefits associated with membership.  (*See, e.g.*, FAC ¶ 205 ("At all times relevant to this complaint, Plaintiff was a member of USASF, and paid dues, fees, and other valuable consideration associated with this membership.").)  Under the terms of their agreement, E.M. alleges that USASF,

> (a) promulgated and/or enforced rules governing competitive cheer coaching, competitive cheer training, cheer camps and competitions throughout the United States; (b) organized, promoted, produced, and/or managed cheer camps, clinics, and competitions throughout the United States and furthered the goals and purposes of the conspiracy and

conduct set forth herein; (c) established guidelines and assessed whether to certify gyms, coaches, and vendors, including without limitation those named herein, as members of USASF, and to otherwise provide "credentials" for these coaches, vendors, and affiliates; and (d) required that athletes, coaches, vendors purchase annual memberships with Defendant USASF and in order to participate in the Varsity Defendants' sanctioned events, and to access USASF member minor athletes.

(*Id.* ¶ 28; *see also id.* ¶ 33.)  Through its membership agreement, USASF agreed to provide its minor participants with a safe and positive environment in which to practice and compete.

E.M. further alleges that USASF created a Professional Responsibility Code ("Code"), which applied to all members.  (*Id.* ¶ 78.)  The Code recognized USASF's role in protecting minor participants.[4]  (*Id.* ¶ 79.)  E.M. alleges that USASF breached its agreement with E.M. by failing to provide her with a safe and secure environment. Specifically, E.M. alleges that USASF did so by "failing to enforce the policies, procedures, and standards expressly adopted by Defendant USASF related to credentialed coaches and adult members." (*Id.* ¶ 253.)  For example, USASF "refused or failed to report non-member coaches and adults accused of misconduct to law enforcement—contravening its representation that USASF and its members are mandatory reporters."  (*Id.* ¶ 97.)  Accordingly, E.M. sufficiently pleads the challenged elements for breach of contract, and the Court denies USASF's motion to dismiss E.M.'s fifth cause of action for breach of contract as to USASF.

**E.    Fraud**

Next, USASF moves to dismiss E.M.'s seventh cause of action for fraud because E.M. "fails to state an underlying tort for which USASF would be liable." (USASF Mot. 9–11.)    A claim for fraud requires "(a) misrepresentation (false

---

[4] In addition to creating a process by which athletes could report misconduct, the Code expressly recognized the risks and dangers associated with a minor athlete-coach relationship.  For example, the Code states, "Once a coach-Athlete relationship is established, a Power imbalance is presumed to exist throughout the coach-Athlete relationship (regardless of age) and is presumed to continue for Minor Athletes after the coach-Athlete relationship terminates until the Athlete reaches 20 years of age."  (FAC ¶ 80.)

representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003) (quoting *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996)). In alleging fraud, Rule 9(b) requires a party to state with particularity the circumstances constituting fraud, including the "who, what, when, where, and how" of the misconduct charged. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010); *see also* Fed. R. Civ. P. 9(b).

To support her claim for fraud, E.M. cites two alleged misrepresentations: "Certifying to Plaintiff that Defendants were responsible for providing safe competitive and training environments" and "Certifying to Plaintiff and her family that the adults involved in the gyms, and competitions, including choreographers, had been duly vetted." (FAC ¶ 272.) These statements fall short for at least two reasons: knowledge of falsity and justifiable reliance.

First, with the exception of claims for negligent misrepresentation, "knowledge of falsity," or scienter, is an element of fraud. *OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 862–63 (2007). Not only does E.M. fail to plead the falsity of these two general statements, E.M. does not plead facts that support USASF's actual knowledge of falsity.

Second, to establish the element of justifiable reliance, "plaintiffs must show (1) that they actually relied on the defendant's misrepresentations, and (2) that they were reasonable in doing so." *OCM Principal Opportunities Fund*, 157 Cal. App. 4th at 863. "A plaintiff asserting fraud by misrepresentation is obliged to plead and prove actual reliance, that is, to 'establish a complete causal relationship' between the alleged misrepresentations and the harm claimed to have resulted therefrom." *Id.* at 864 (internal quotation marks omitted) (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993)). Here, E.M. fails to plead that she actually relied on the alleged misrepresentations, and there are no facts indicating these two representations played

a substantial factor in E.M.'s participation in cheer.  *See Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1244, 1256 (2009) ("It is not . . . necessary that [a plaintiff's] reliance upon the truth of the fraudulent misrepresentations be the sole or even the predominant or decisive factor in influencing his conduct . . . . It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." (alteration in original) (internal quotation marks omitted) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 976–77 (1997))).

Accordingly, E.M.'s claim for fraud falls short based on the identified alleged misrepresentations.  E.M.'s remaining allegations of USASF's fraudulent misconduct, (FAC ¶ 272(c)–(h)), do not constitute "misrepresentations" for the purposes of fraud.  For example, "[f]acilitating an unchaperoned environment for child-athletes," (FAC ¶ 272(d)), is not a "positive assertion" made to E.M. by USASF.  *Diediker v. Peelle Fin. Corp.*, 60 Cal. App. 4th 288, 297 (1997) (quoting *Wilson v. Century 21 Great W. Realty*, 15 Cal. App. 4th 298, 306 (1993)).  Therefore, the Court grants USASF's motion to dismiss E.M.'s seventh cause of action as to USASF with leave to amend.

## F.   Negligent Security

USASF next moves to dismiss E.M.'s eighth cause of action for negligent security.  (USASF Mot. 12–13.)  This claim against USASF fails for many of the same reasons as E.M.'s claims for negligent supervision and gross negligence discussed above.  Negligent security claims—which are commonly brought against landowners and security companies—are based on "the duty to take reasonable steps to secure common areas against *foreseeable* criminal acts of third parties that are likely to occur in the absence of such precautionary measures."  *Sharon P. v. Arman, Ltd.*, 21 Cal. 4th 1181, 1189 (1999).  An affirmative action to control the acts of a third party "will be imposed only where such conduct can be reasonably anticipated," with foreseeability being a "'crucial factor' in determining the existence of duty."  *Id.* (quoting *Ann M. v. Pac. Plaza Shopping Ctr.*, 6 Cal. 4th 666, 676 (1993)).

Here, as discussed previously, E.M. has failed to plead any facts showing that USASF would have reasonably foreseen that Miller would have engaged in the alleged misconduct.  There are no facts indicating that Miller had any reported history of abuse in the past, nor did E.M. plead any other facts that would have made it reasonable for USASF to foresee Miller's misconduct.  *See Sharon P.*, 21 Cal. 4th at 1199 ("[A]bsent any prior similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location, we cannot conclude defendants were required to secure the area against such crime.").  Accordingly, the Court grants USASF's motion to dismiss E.M.'s eighth cause of action for negligent security as to USASF.  Because the Court finds that amendment would be futile, the dismissal is without leave to amend.

## G.   Civil Conspiracy

Next, turning to E.M.'s claim for civil conspiracy—as discussed with respect to Miller's motion to dismiss above—there is no separate tort of civil conspiracy, but it rather serves as a theory of liability.  *Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 574 (2005).  Civil conspiracy requires that "each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it."  *Choate*, 86 Cal. App. 4th at 333.  Here, E.M. falls short of pleading a prima facie case of civil conspiracy by failing to establish the existence of "a common and unlawful plan," *id.*, or that USASF "had knowledge of and agreed to both the objective and the course of action that resulted in the injury," *Berg & Berg Enters.*, 131 Cal. App. 4th at 823.  Accordingly, the Court grants USASF's motion to dismiss E.M's ninth cause of action for civil conspiracy as to USASF with leave to amend.

## H.   *Respondeat Superior*

USASF next moves to dismiss E.M.'s theory of *respondeat superior* because, "[w]hen a trial court dismisses the predicate claims on which a plaintiff's theory of vicarious liability is based, it follows 'as a matter of law, . . . there is no underlying

tort from which *respondeat superior* liability can flow.'"    (USASF Mot. 14.)
Although USASF's contention of law is correct, the Court here has not dismissed all
predicate claims on which E.M. alleges that her theory of vicarious liability is based.
As this is the only argument for relief brought forth by USASF, the Court denies its
motion to dismiss tenth cause of action for *respondeat superior* as to USASF.

## I.    Intentional Infliction of Emotional Distress

Moving to dismiss E.M.'s eleventh cause of action for IIED, USASF argues
that E.M. "fails to plead any facts supporting the contention that USASF proximately
caused any injury to Plaintiff," "fails to plead that USASF intended to cause
emotional distress, or knew or should have known that its conduct would result in
serious emotional distress to Plaintiff," and "fails to meet the federal pleading
standard because [the FAC] does not plead any facts 'demonstrating the nature, extent
or duration of [Plaintiff's] alleged emotional distress.'"    (USASF Mot. 14–15 (second
alteration in original) (quoting *Angie M. v. Superior Ct.*, 37 Cal. App. 4th 1217, 1227
(1995)).)    The Court addresses each of USASF's arguments in turn.

Here, under the presented facts, the Court recognizes two methods by which
E.M. sufficiently alleges that USASF tortiously caused her emotional distress.    First,
USASF failed to provide a safe and secure space for its minor athletes to practice and
compete.    To this point, E.M. alleges that USASF did not sufficiently supervise the
coaches and gyms with which its members practiced and competed.    When combined
with USASF's awareness of the "power imbalance" in the coach-athlete relationship,
(*see* FAC ¶ 80), these allegations impute on USASF the knowledge that a failure
could result in the infliction of emotional distress as to an athlete.    Second, when E.M.
reported Miller's misconduct to USASF, the investigative process was "deeply
traumatizing and unsettling."    (*Id.* ¶ 188.)    Throughout the reporting process, E.M.
"experienced bullying, skepticism, dismissiveness, and a general lack of belief."    (*Id.*
¶ 189.)    It is entirely plausible that these allegations—if true—could be considered "so
'extreme as to exceed all bounds of that usually tolerated in a civilized community.'"

*Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)).

Furthermore, the Court rejects USASF's argument that E.M. fails to allege sufficient facts to establish that she suffered severe emotional distress.  E.M. alleges that she "began experiencing severe depression, anxiety and panic attacks."  (*Id.* ¶ 184.)  She also developed an eating disorder and a substance abuse disorder.  (*Id.*)  Later, when E.M. returned to the same gym where the sexual abuse occurred, E.M. began experiencing severe symptoms associated with complex post-traumatic stress disorder.  (*Id.* ¶ 186.)  The Court finds these alleged injuries sufficient to constitute emotional distress.  *See Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 397 (1970) ("Severe emotional distress [is] of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it.").  Accordingly, as E.M. sufficiently pleads the challenged elements of IIED, the Court denies USASF's motion to dismiss E.M.'s eleventh cause of action for IIED as to USASF.

**J.     California Consumers Legal Remedies Act, Cal. Civ. Code § 1770**

Finally, USASF argues that the Court should dismiss E.M.'s CLRA claim—which seeks compensatory and punitive damages—because the Act's remedy is limited to restitution.  (USASF Mot. 15–16 ("[R]estitution is the sole recoverable form of damages under the CLRA.").)

Section 1780(a) of CLRA states "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by section 1770 may bring an action against that person to recover or obtain any of the following: (1) Actual damages . . . ."  Cal. Civ. Code § 1780(a).  "The statute authorizes a plaintiff to recover actual damages."  *Konik v. Time Warner Cable*, No. 2:07-cv-763-SVW (RZx), 2010 WL 11549435, at *5 (C.D. Cal. July 19, 2010).  Accordingly, because CLRA permits the recovery of damages, the Court denies USASF's motion to dismiss E.M.'s twelfth cause of action as to USASF.

# VI.     CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Miller's Motion to Dismiss.  (ECF No. 161.)  Specifically, as to Miller, the Court **DISMISSES** E.M.'s ninth cause of action for civil conspiracy.  The Court denies Miller's motion to dismiss E.M.'s first (18 U.S.C. § 2255), second (gross negligence), fourth (assault and battery), and eleventh (IIED) causes of action.

Furthermore, the Court **GRANTS IN PART** and **DENIES IN PART** USASF's Motion to Dismiss.  (ECF No. 155.)  Specifically, as to USASF, the Court **DISMISSES** E.M.'s first (18 U.S.C. § 2255), third (negligent supervision), seventh (fraud), eighth (negligent security), and ninth (civil conspiracy) causes of action.  The Court denies USASF's motion to dismiss E.M.'s second (gross negligence), fifth (breach of contract), tenth (*respondeat superior*), eleventh (IIED), and twelfth (Cal. Civ. Code § 1770) causes of action.

The Court provides E.M. leave to amend its third, seventh, and ninth cause of action to remedy the deficiencies detailed above.  If E.M. elects to amend, the Second Amended Complaint is due no later than **twenty-one (21) days** from the date of this Order, in which case Defendants should answer or otherwise respond within **fourteen (14) days** of E.M.'s filing of the Second Amended Complaint.  If E.M. does not timely amend, the dismissal of the third, seventh, and ninth causes of action shall be deemed a dismissal with prejudice as of the lapse of the deadline to amend, and Miller and USASF shall answer the First Amended Complaint, as modified herein, within **fourteen (14) days** of the lapsed deadline.

**IT IS SO ORDERED.**

May 31, 2024

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**